## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JESSICA R. SAMUELS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-19-123-SPS** |
| | ) | |
| **COMMISSIONER of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

The claimant Jessica R. Samuels requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id.* §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-nine years old at the time of the administrative hearing (Tr. 35). She completed high school while taking special education classes and has no past relevant work (Tr. 24, 176). The claimant alleges she has been unable to work since her March 2, 2017 application date, due to plates in her right leg, arm, and face (Tr. 175).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 2, 2017. Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated July 24, 2017 (Tr. 15-26). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and up to ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk two hours in an eight-hour workday. Additionally, he limited her to simple, repetitive tasks (Tr. 19). The ALJ thus concluded that although the claimant had no past relevant work to

return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, document preparer, electric assembler worker, and polisher (Tr. 24-25).

### Review

The claimant contends that the ALJ erred by improperly assessing her RFC, which affected the jobs she could perform. Specifically as to the RFC assessment, the claimant asserts that the ALJ: (i) failed to account for additional limitations, (ii) improperly discounted the opinion of a consultative examiner, and (iii) failed to properly consider her subjective limitations. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of status post injuries in motor vehicle accident including orbital fracture, nasal fracture, right ulnar and radial fracture, and left ankle fracture; obesity; and mild cognitive impairment (Tr. 17). The relevant medical evidence reflects that the claimant was injured in a motor vehicle accident February 13, 2017 (Tr. 267). The claimant sustained injuries to the left side of her face, her right arm, and her left ankle as a result and underwent surgery of her right arm and left ankle (Tr. 267, 260-261). Treatment notes reflect the claimant reported dizziness while she was a passenger in the vehicle, and apparently attempted to grab the steering wheel which caused them to hit a retaining wall at a high speed (Tr. 276). Neurological and cardiac testing came back normal (Tr. 289, 298-298).

Even prior to the February 2017 car accident, the claimant began complaining of dizziness of unknown etiology (Tr. 251). And after the accident, the claimant again reported dizziness when standing, on March 20, 2017 (Tr. 364). She then reported tripping

over a root and falling in her yard in April 2017, twisting her left ankle, and earning her a diagnosis of left ankle sprain (Tr. 377-381).  An x-ray revealed she was negative for acute osseous injury and showed her fixated old medial and lateral malleolar fractures with intact hardware (Tr. 385).  However, in September 2017, the claimant continued to complain of pain in her right arm and left ankle and was diagnosed with chronic left foot drop (Tr. 404).  She was noted to have failed conservative care and was going to be started on narcotic pain medications pending a urinalysis (Tr. 404).  In May 2018, the claimant was treated for fracture blisters on her left ankle (Tr. 409, 412-413).  A follow-up x-ray of the left foot revealed no significant radiographic abnormalities (Tr. 418)

On June 6, 2017, Dr. Wojciech L. Dulowski conducted a physical examination of the claimant, noting she had good coordination, but that she walked with a walker and had an antalgic gait to the left side and could not walk on her heels or tiptoes, and that she reported she had no feeling in her right hand and left leg (Tr. 388).  He further noted slightly decreased movement of the left ankle joint, but no other reductions to her range of motion (Tr. 388, 390).  He assessed her with a history of motor vehicle accident, noting the surgeries on her right forearm and wrist, as well as her left ankle (Tr. 389).

On July 3, 2017, Dr. Theresa Horton, Ph.D. conducted a diagnostic interview and mental status examination of the claimant (Tr. 397).  Dr. Horton found that the claimant's testing placed her in the range of mild cognitive impairment, and that she also had a diagnosis of unspecified mood disorder with anxious and depressed features (Tr. 399).  Dr. Horton noted the claimant's report that she had an IEP from fifth through twelfth grade, and that she had tried to complete a vocational nursing program as an LPN but had not

been able to complete the one-year program even after two years (Tr. 398). She further stated that the claimant appeared capable of understanding, remembering and completing most simple and somewhat more complex instructions and tasks, though her pace was somewhat slowed, and that this would affect her level of productivity (Tr. 400). She explained, stating, "She likely is capable of understanding other tasks that may be more complex yet have difficulty with management of them" (Tr. 400). Last, Dr. Horton stated that the claimant would not adjust well in fast-paced areas and/or densely populated areas (Tr. 400).

State reviewing physicians found that the claimant was capable of lifting fifty pounds occasionally and twenty-five pounds frequently, that she could stand/walk and sit about six hours in an eight-hour workday, and that she had no further limitations, including manipulative or postural (Tr. 55-56, 68-69). Additionally, state reviewing physicians concluded that the claimant did not have a severe mental health impairment (Tr. 54, 66-67).

At the administrative hearing, the claimant testified that since her motor vehicle accident, she has struggled with daily pain in her arm and leg as a result (Tr. 36-37). She stated that she has difficulty sleeping from the pain, and that she props her leg up six times per day due to swelling (Tr. 38, 40). When asked about her physical capabilities, she testified that she could not stand or walk two hours in an eight-hour workday, that she can only stand a few minutes at a time, and that she cannot sit without propping up her leg (Tr. 38, 41). Additionally, she testified that she could not pick up ten pounds without a problem, and that she has developed fracture blisters as a result of the boot on her left leg

(Tr. 39).  She testified that her surgeon will not see her again because she cannot pay him (Tr. 40).  When asked about her education, the claimant stated that she had attended special education classes in high school and that she has trouble reading (Tr. 43).

In his written opinion, the ALJ summarized the claimant's administrative hearing testimony, as well as the medical evidence of record.  As relevant to this appeal, the ALJ noted the claimant's complaints of dizziness prior to the motor vehicle accident, and the unremarkable testing that resulted, as well as the motor vehicle accident records and subsequent treatment for dizziness and pain (Tr. 20-21).  The ALJ summarized Dr. Dulowski's report and findings and gave his assessment great weight, noting that Dr. Dulowski found the claimant could effectively oppose her thumb to fingertips, manipulate small objects, and effectively grasp tools (Tr. 21-24).  As to her mild cognitive impairment, the ALJ referred to Dr. Horton's examination and extensively summarized her findings, but assigned her opinion little weight, asserting there was "little to no evidence" the claimant's productivity would be affected and noting that she left her job due to dizziness and not problems with productivity.  Noting her mild cognitive impairment, however, he limited her to simple, repetitive tasks (Tr. 22-23).  The ALJ then gave little to no weight to the state reviewing physicians as to the claimant's physical impairments or mental impairments, noting sedentary work activity was more appropriate given her continued left ankle problems and a limitation to simple, repetitive tasks was appropriate in light of the documented mild cognitive impairment (Tr. 24).  He then found that the claimant's subjective statements were not consistent with the record, stating that there was no clinical data to support her subjective complaints, that her gait was documented as *not* being

affected in May 2018 when she went to the ER with complaints of blisters, that she appeared poorly motivated to work given her work history, and that she reported difficulty with paying for treatment but there was no evidence she had sought low or no-cost treatment (Tr. 24).  He thus concluded that she was not disabled.

The claimant first asserts that the ALJ erred in assessing her RFC.  More specifically, she claims the ALJ failed to consider or account for her need to wear a brace due to her foot drop, her inability to move her toes, persistent swelling, the fracture blisters, her need for an assistive device, her need to elevate her leg, diminished strength in her right upper extremity, and her persistent dizziness.  Furthermore, she contends the ALJ failed to account for her history of special education and that she does not read well, despite his diagnosis of mild cognitive impairment, and that the ALJ also erred in evaluating Dr. Horton's opinion because he did not account for her mood disorder.  Finally, she asserts that the ALJ failed to properly consider her subjective allegations.

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996).  It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Id.  This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)."  20 C.F.R. §§ 404.1545(b),

416.945(b).  Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.  Here, the ALJ has fulfilled his duty.  The claimant nevertheless further asserts that the evidence does not support a finding that she can perform work at the sedentary level in light of, *inter alia*, her continuing ankle problems, need for assistive device, and recurring dizziness.

Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC.  *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  Despite claimant's arguments, the evidence does not reflect a limitation of time for how long the claimant can walk, and the ALJ clearly considered her continuing ankle problems by assigning her to sedentary work.  Furthermore, she has pointed to no medical documentation, much less a prescription, establishing the *need* for an assistive device.  *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC.  Instead, [he] only needs to present medical

documentation establishing the need for the device.  The ALJ therefore erred in relying on [the claimant's] lack of a prescription for a cane.").  Because she points to no evidence other than her own assertions, the Court declines to find an error here.  *See Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

In this case, the ALJ noted and fully discussed all of the findings of the claimant's various treating, consultative, and reviewing physicians, including the records related to the claimant's dizziness, swelling, blisters, and gait.  The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform sedentary work with the aforementioned limitations is well supported by substantial evidence.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.  The undersigned Magistrate Judge finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC.  *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

As to Dr. Horton, "[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the

disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

The Court finds that the ALJ's treatment of Dr. Horton's opinion was appropriate. He noted Dr. Horton's statements but found them unpersuasive because there was no evidence in the record related to productivity issues. The ALJ did, however, account for the claimant's documented mild cognitive impairment documented by Dr. Horton. Thus, the ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to the opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). The claimant contends that the ALJ's assignment of

"little weight" to her opinion ignores her mood disorder, but the ALJ looked at all the evidence in the record and noted there were no other records related to the claimant's mental health. The Court thus finds that the ALJ properly considered Dr. Horton's opinion, along with all the other opinions in the record in concert with the medical evidence in accordance with the proper standards and concluded that her opinion was entitled to little weight.

The claimant further contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should

---

[2]   SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3]   Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors

consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's testimony and normal radiographic findings in all

to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

follow-up scans after the motor vehicle accident, findings that she had a normal gait in 2018 despite the fracture blisters, the lack of evidence she sought low or no-cost treatment options, and her apparent poor motivation to work (Tr. 22-24).  Accordingly, the ALJ's determination is entitled to deference and the Court finds no error in analyzing the claimant's subjective statements.

Finally, the claimant asserts that the ALJ's failure to consider the additional limitations as discussed above resulted in an error in the identification of jobs she can perform at step five.  But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform less than the full range of sedentary work.  The final contention is therefore without merit.  In essence, the claimant asks the Court to reweigh the evidence in his favor, which the Court cannot do.  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") *citing Casias*, 933 F.3d at 800.

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled.  *See Hill*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.  This was "well within the province of the ALJ."  *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final

-14-

responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.  Accordingly, the decision of the Commissioner should be affirmed.

<strong>Conclusion</strong>

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**